IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Income Tax

JULIE ANN BARLOW )
and AARON BARLOW, )
 )
Plaintiffs, ) TC-MD 110820N
 )
v. )
 )
DEPARTMENT OF REVENUE, )
State of Oregon, )
 )
Defendant. ) **DECISION**

Plaintiffs appealed Defendant's Notice of Refund Denial, dated May 17, 2011, denying

Plaintiffs' claimed working family credit (WFC) for the 2010 tax year. A telephone trial was

held in this matter on February 7, 2012. Julie Ann Barlow (Barlow) appeared and testified on

behalf of Plaintiffs. Kevin Cole (Cole) appeared on behalf of Defendant. Plaintiffs' Exhibit 1

was offered and received without objection. Defendant did not submit any exhibits.

I.  STATEMENT OF FACTS

Barlow testified that, in 2010, Plaintiffs' three children were ages one, two, and five at

the beginning of the year. She testified that the two younger children were not in school, but the

oldest attended kindergarten from 7:50 a.m. to 2:20 p.m. during the school year. Barlow testified

that, in 2010, she was attending cosmetology school and her husband was working full time.

(*See* Ptfs' Ex 1 at 2, 3.) She testified that she received student loans while she was attending

school, including loans to cover living expenses. (*See id.* at 3.) Barlow testified that, in order to

receive loans to cover living expenses, she had to "prove" that she had child care expenses and

other bills; she later testified that she did not have to provide bills or statements to "prove" those

expenses. Barlow testified that she received student loan checks approximately every eight

weeks and that she would cash those checks and pay her child care providers in cash. (*See id.* ("(Debit) S.A. Check" in amounts ranging from $1,508.00 to $1,973.90).) The court inquired whether Barlow deposited the cash received from her student loan checks into a bank account, Barlow testified that she did not, but, rather, kept the cash on hand.

Barlow testified that her school schedule "clocked hours" were from 9:00 a.m. to 5:00 p.m., but that she typically went in about 15 minutes early to set up her station and typically did not leave until at least 5:30 p.m. because she had to finish up with clients. She testified that, on a few Saturdays during 2010, she had to complete volunteer work for her program. Barlow testified that she graduated on December 7, 2010, but then spent a week studying for exams. She testified that the exam fee was $1,000, so she studied every day during the week before exams.

Barlow testified that Plaintiffs employed two child care providers, Teresa Gooding (Gooding), Barlow's mother, and Amanda Corosu (Corosu), the girlfriend of Barlow's brother. Neither Gooding nor Corosu testified at trial. Barlow testified that, on weekdays, Gooding typically watched the children in the morning from about 7:50 a.m. until between 12:00 and 1:00 p.m., then took the children to Corosu's house. Barlow testified that Gooding sometimes watched the children at Plaintiffs' house and sometimes watched the children at Gooding's house. Barlow testified that, on weekdays, Corosu typically watched the children from 12:00 or 1:00 p.m. until Barlow picked them up between 5:45 and 6:00 p.m. Barlow testified that either she or Gooding took the oldest child to kindergarten in the mornings and that either she or Gooding picked him up in the afternoon and took him to Corosu's house.

Barlow testified that she paid both Gooding and Corosu in cash at a flat rate of $100 per week and that she paid both providers on a weekly basis. As evidence of her arrangement with Corosu, Barlow provided a typed statement dated "Jan 1, 2010," signed by Corosu and Barlow,

stating that Barlow "agrees to pay [Corosu] $100.00 a week for child care she provides for my children. Payable to her in cash, every last Friday of every month she provides childcare. This is a flat rate I will pay even if she does not provide child care everyday during that week." (Ptfs' Ex 1 at 17.) Barlow testified that she did not have a written agreement with Gooding because she did not feel that was necessary. Barlow provided a calendar for 2010 stating "5 hrs" on all weekdays except January 1, November 25, and December 20 through 31. (Ptfs' Ex 1 at 4-15.) The calendar states totals of "100" at the end of each week. (Id.) For each month of 2010, there is one date indicating "paid cash" and the amount paid.[1] (Id.) Barlow testified that the calendar was created by Corosu based on a calendar that Corosu kept during 2010.

Barlow also provided receipts that she testified were issued to her by Gooding and Corosu. (Ptfs' Ex 18-25.) There are 12 receipts labeled as "from [Corosu]" and 10 receipts issued by Gooding.[2] (Id.) Barlow testified that she paid both Gooding and Corosu on a weekly basis, in cash. She testified that Corosu issued receipts monthly, rather than weekly, because that was Corosu's preference, and that Corosu did not provide any of the receipts to Barlow until the end of 2010, because that was Barlow's preference. The receipts identified as issued from Corosu total $5,000 for 2010, and the receipts identified as issued from Gooding total $4,200 for 2010, indicating total child care payments of $9,200 for 2010. (Id.)

Barlow testified that Gooding reported the income that she received from Plaintiffs on her income tax returns and to the state employment department relating to her receipt of unemployment benefits. Gooding did not testify during trial or provide her income tax returns. Barlow testified that she provided some of Gooding's statements from the employment

---

[1] Cole asked Barlow why the calendar indicates monthly cash payments rather than weekly cash payments. In response, Barlow testified that was how Corosu recorded payments on the calendar.

[2] Plaintiffs did not provide any receipts from Gooding for the time period after October 22, 2010.

department to Defendant, but she did not provide them to the court because she sent her only copies to Defendant. Cole confirmed that Plaintiffs sent some of Gooding's statements from the employment department during the period February 6, 2010, through October 1, 2010, and that the statements report income of $100 per week for 20 hours worked per week. He noted that the unemployment statements do not identify the source of the income. Barlow testified that Gooding called the employment department and reported that the work was for child care and that is why the payments were below the minimum wage. Barlow testified that Gooding was seeking work during 2010, but she does not know what type of work or whether Gooding was going to interviews. Barlow testified that Gooding suffered from health problems during 2010 that limited her ability to do physical labor and also to pick up and carry the children.

Barlow testified that Corosu reported the income that she received from Plaintiffs on her income tax returns. Corosu did not testify or provide her income tax returns to the court. Barlow testified that Corosu is a "stay at home mom" and, to the best of Barlow's knowledge, Corosu does not have a job. Cole asked whether Corosu watched other children, in addition to Plaintiffs' children. Barlow's testimony in response was unclear. She testified that Corosu does not have a daycare business. Barlow also testified that she had seen other children at Corosu's house, but that she is not aware whether Corosu was paid to watch those children, explaining that it is "none of [her] business."

## II.  ANALYSIS

The issue before the court is whether Plaintiffs are entitled to a WFC for the 2010 tax year based on claimed child care payments totaling $9,200. ORS 315.262 provides a refundable credit, the WFC, for qualifying taxpayers to partially offset child care costs incurred while

taxpayers are working or attending school.[3] ORS 315.262(3) states in pertinent part: "A qualified taxpayer shall be allowed a credit against the taxes otherwise due under ORS chapter 316 equal to the applicable percentage of the qualified taxpayer's child care expenses (rounded to the nearest $50)." "[T]he [WFC] is limited to costs associated with child care." OAR 150-315.262(3). "Costs associated with child care do not include: * * * * * (F) Transactions that are not arm's-length or have no economic substance." OAR 150-315.262(3)(b). Plaintiffs have the burden of proof and must establish their case by a "preponderance" of the evidence. ORS 305.427. A "[p]reponderance of the evidence means the greater weight of evidence, the more convincing evidence." *Feves v. Dept. of Revenue,* 4 OTR 302, 312 (1971). "[I]f the evidence is inconclusive or unpersuasive, the taxpayer will have failed to meet his burden of proof * * *." *Reed v. Dept. of Rev.,* 310 Or 260, 265, 798 P2d 235 (1990).

Defendant argues that Plaintiffs are not entitled to a WFC for the 2010 tax year because they have not provided adequate proof of payments for child care. Defendant notes that Plaintiffs had a close relationship with both of their child care providers, suggesting that the transactions were not at arm's-length, and neither provider testified at trial. Defendant argues that, even if Plaintiffs paid for child care in 2010, it is not clear when payments were made or the amount of those payments because the alleged payments were in cash.

"Transactions between related parties rightly generate heightened scrutiny, because of the increased potential for favorable treatment (*e.g.,* leniency when the taxpayer cannot afford some or all of the amount due)." *Carter v. Dept. of Rev.,* TC-MD No 080689C, WL 1351818 at *3 (Apr 30, 2009). "[T]here is not a rebuttable presumption that a close relationship between parties implies that their transaction was not at arm's-length." *Lib-Myagkov v. Dept. of Rev.*,

---

[3] All references to the Oregon Revised Statutes (ORS) and to the Oregon Administrative Rules (OAR) are to 2009.

TC-MD No 091200C , WL 4736621 at *5 (Nov 23, 2010).  However, "[c]ommon life experience teaches that closely related individuals will often care for young ones at little or no cost." *Briggs v. Dept. of Rev.*, TC-MD No 070700E, 2008 WL 352307 at *3 (Jan 30, 2008).  "In * * * WFC cases, where payment is made in cash and the provider is a friend or relative of the taxpayer, the sworn testimony of the child care provider is critical. * * * These cases turn on a question of fact, hinging on the credibility of Plaintiffs and the provider." *Moua v. Dept. of Rev.*, TC-MD No 081230B at 3 (Mar 4, 2010) (citations omitted).

The court does not doubt that Plaintiffs' three children received child care during 2010 so that Plaintiffs could work and attend school.  It is likely that Gooding and Corosu were the primary child care providers for Plaintiffs' children, although they did not testify at trial. Plaintiffs have not provided any reliable evidence to support Barlow's testimony that Plaintiffs paid Gooding and Corosu for child care, nor have Plaintiffs provided reliable evidence corroborating the dates or the amounts of child care payments.  Plaintiffs provided some receipts from Corosu and Gooding.  However, the receipts were not issued contemporaneously with the weekly cash payments, as Barlow testified.  Plaintiffs did not provide bank statements or the providers' income tax returns.  Barlow's testimony that Gooding reported income of $100 per week to the employment department lends some support to Barlow's testimony that she paid Gooding $100 per week.  However, as Cole noted, Gooding did not testify at trial and Gooding's report to the employment department does not indicate the source of the payments.

### III.  CONCLUSION

After carefully considering the testimony and evidence presented, the court finds that Plaintiffs failed to provide reliable evidence in support of their claimed 2010 WFC.  Because Plaintiffs have not satisfied the burden of proof, their appeal must be denied.  Now, therefore,

IT IS THE DECISION OF THIS COURT that Plaintiffs' appeal is denied.

Dated this ___ day of April 2012.

ALLISON R. BOOMER
MAGISTRATE PRO TEMPORE

*If you want to appeal this Decision, file a Complaint in the Regular Division of the Oregon Tax Court, by mailing to: 1163 State Street, Salem, OR 97301-2563; or by hand delivery to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your Complaint must be submitted within 60 days after the date of the Decision or this Decision becomes final and cannot be changed.*

*This document was signed by Magistrate Pro Tempore Allison R. Boomer on April 20, 2012.  The Court filed and entered this document on April 20, 2012.*